IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **DEBORAH GILLEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 4:08-CV-02324-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF** | ) |
| **SOCIAL SECURITY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Deborah Gillen ("Ms. Gillen") seeks review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Secretary"), under 42 U.S.C. § 405(g) of the Social Security Act ("SSA"), who denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Ms. Gillen timely pursued and exhausted her

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

administrative remedies. This case is ripe for review under 42 U.S.C. § 405(g).[2]

## FACTUAL AND PROCEDURAL HISTORY

On October 23, 2003, Ms. Gillen applied for disability status, DIB, and SSI, allegedly commencing on November 25, 2002. (Tr. 34, 96, 319). Ms. Gillen suffers from the following medical conditions: degenerative joint disease of the ankles, carpal tunnel syndrome, and osteoarthritis of the hands. (Tr. 23). Her disability claims were initially denied on March 24, 2004. (Tr. 34).

On April 13, 2004, she requested a hearing before an administrative law judge ("ALJ"). (Tr. 51). In the first hearing, held on July 12, 2005, an ALJ ordered two consultative evaluations, an orthopedic examination, and a psychological assessment. (Tr. 319).

Another hearing relating to Ms. Gillen's case was held before an ALJ on May 4, 2006, during which time she amended her claim to allege she became disabled on August 1, 2003. (Tr. 317, 323-24). On August 21, 2006, the ALJ entered a decision denying Ms. Gillen's disability claims (Tr. 32-39).

Subsequently, Ms. Gillen timely requested review by the Office of Disability Adjudication and Review (the "Appeals Council"). (Tr. 15-17). On May 7, 2007,

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

the Appeals Council vacated the August 21, 2006, disability decision and remanded Ms. Gillen's case for further review by an ALJ. (Tr. 77-79).

On October 23, 3007, an ALJ held a video hearing, during which Ms. Gillen again amended her onset of disability date to August 22, 2005. (Tr. 362, 370). The ALJ denied her claims on March 13, 2008. (Tr. 21-31). At the time of this final hearing, Ms. Gillen was nearly 52 years old. (Tr. 98).

On December 12, 2008, after the Appeals Council denied Ms. Gillen's timely request for review (Tr. 5-7), she filed this appeal. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

This court will determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales,* 402 U.S. 389, 390 (1971); *McRoberts v. Bowen,* 841 F.2d 1077, 1080 (11th Cir. 1988); *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1983); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence," and will conclude that the decision is so supported if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, 703 F.2d at 1239. Substantial

evidence is "more than a scintilla, but less than a preponderance." *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB, SSI, and to establish disability status, a claimant must be disabled under the SSA and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must establish a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Commissioner employs the following five-step sequential evaluation, to determine whether a claimant is disabled:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the Secretary;
(4) whether the claimant can perform his past work; and
(5) whether the claimant is capable of performing any work in the national

---

[3] The "Regulations" promulgated under the SSA are listed in 20 C.F.R. Parts 400 to 499, as current through October 19, 2009.

economy.

20 C.F.R. § 404.1520(a)(4)(i-v); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord, McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "[If a claimant satisfies] steps one and two, he [is to] be found disabled if he suffers from a listed impairment. If the claimant does not have a listed impairment but cannot [do past] work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must show such work exists in the national economy in significant numbers. *Foote*, 67 F.3d at 1559.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Gillen had not engaged in substantial gainful activity since her most recently amended onset date of August 22, 2005. (Tr. 23). Thus, the claimant satisfied step one of the five-step test. 20 C.F.R. § 404.1520(b).

Under step two, the ALJ concluded that "[t]he claimant has the following severe impairments: degenerative joint disease of the ankles, carpal tunnel syndrome, and osteoarthritis of the hands. (Tr. 23 (citations omitted)). Accordingly, Ms. Gillen satisfied the second step of the sequential disability evaluative process. 20 C.F.R. § 404.1520(c).

While the ALJ considered Ms. Gillen's anxiety disorder, he determined that particular condition to be non-severe. (Tr. 24). The ALJ also observed that Ms. Gillen's "records reflect a history of significant polysubstance abuse and dependence[.]" (*Id.*).

At step three, the ALJ determined that Ms. Gillen did not have an impairment or a group of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25). Specifically, the ALJ addressed why Ms. Gillen satisfied neither Listing 1.02A nor 1.02B in terms of her musculoskeletal impairments. (*Id.*). The ALJ further indicated that, because Ms. Gillen's anxiety disorder was not severe, she did not meet Listing 12.06 applicable to anxiety-related conditions. (*Id.*). Ms. Gillen does not challenge this third level determination on appeal.

The ALJ then evaluated Ms. Gillen's residual functional capacity at step four, and the claimant was found to have the ability to meet the demands of light work.[4]

---

[4] Light work is defined as:

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

(Tr. 25). More specifically, the ALJ described Ms. Gillen's work-related abilities as follows:

> After consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform all mental functions required by unskilled and semiskilled work as set out at 20 CFR 404.1521 and 416.921; to stand/walk four to six hours or greater in an eight-hour workday with regular breaks; to lift/carry up to 50 pounds occasionally and 10 to 25 pounds frequently; to sit without limitation; <u>and to otherwise perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)</u>.

(Tr. 25 (emphasis added)). Against this backdrop and in reliance upon testimony from a vocational expert, the ALJ determined that Ms. Gillen did not suffer from impairments preventing her from performing her past relevant work as a waitress. (Tr. 30).

It was unnecessary for the ALJ to continue to step five of the sequential analysis due to his finding that Ms. Gillen was able to perform past relevant work. (Tr. 30); *see also Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) ("If a Social Security claimant 'can still do [the] kind of work' he has done in the past, he

---

these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

will be found not disabled.") (citations omitted). Accordingly, the ALJ concluded Ms. Gillen was not disabled as defined by the SSA, at any time from August 22, 2005, through March 13, 2008, the date of the ALJ's decision. (Tr. 31).

## **ANALYSIS**[5]

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[6]

In this appeal, Ms. Gillen primarily complains that the ALJ "did not properly evaluate the credibility of the Plaintiff's complaints of pain consistent with the Eleventh Circuit Pain Standard." (Doc. 6 at 5). Ms. Gillen also contends that the ALJ "erroneously relied on the consultative evaluation of Dr. Lisiak." (*Id.* at 8).

---

[5] The undersigned has recently rendered another decision which similarly affirmed the ALJ's application of the Eleventh Circuit pain standard from which the analysis and disposition of this case persuasively flow. *See Johnson v. Astrue*, No. 5:09-CV-0043-VEH, (Docs. 12, 13) (N.D. Ala. Feb. 3, 2010) (upholding ALJ's determination adverse to claimant under Eleventh Circuit pain standard).

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

I.  **THE ALJ EVALUATED THE CREDIBILITY OF MS. GILLEN'S SUBJECTIVE COMPLAINTS OF DISABLING PAIN AND OTHER SYMPTOMS UNDER THE APPROPRIATE LEGAL STANDARD, AND THE DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

In order to satisfy the Eleventh Circuit pain standard, Mr. Johnson must prove "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain." *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985)). Relatedly, "[w]hile both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

Here the ALJ determined that Ms. Gillen had not met her burden. More specifically, the ALJ explained:

> After considering the evidence of record, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however for the reasons explained below, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the residual functional capacity

assessment.

(Tr. 26-27).

The ALJ then detailed his reasoning for partially rejecting Ms. Gillen's asserted degree of her subjective symptoms. Regarding the alleged severity of her carpal tunnel syndrome, the ALJ noted that when she went to Dr. Jariwala "for an August 2005 claims-related consultative examination" Ms. Gillen "reported no history of CTS and had no complaints of wrist pain/numbness[.]" (Tr. 27). Similarly, while Ms. Gillen received treatment through the Cooper Green clinic system from May 2004 to April 2005, while she did report carpal tunnel syndrome as part of her medical history, she never made any complaints relating to that condition during the course of her treatment there. (*Id.*).

Other evidence relied upon by the ALJ to discount the degree of any subjective problems that Ms. Gillen claimed as a result of her having carpal tunnel syndrome (*i.e.*, "an inability to grip objects securely or to lift more than 10 pounds") included her "still working as a dishwasher/kitchen helper in April 2007 when she complained to Dr. Harris that her fingers hurt" and her subsequently reporting leg, hip, and knee pain, but "no hand complaints at all when she saw Bruce Romeo, M.D. for an additional consultative examination in July 2007." (Tr. 27, 266).

The ALJ also pointed to Ms. Gillen's history of substance abuse as a basis for

discrediting her credibility:

> The claimant alleges chronic serve pain as a major reason that she cannot work, and there is evidence of numerous complaints of such pain throughout her records.  <u>However, there is also evidence of an underlying motive for those complaints—specifically, her dependence on opiate painkillers</u>.  When the claimant was being treated at Cooper Green, she reported that she had been taking Lortab for 28 years and later reported a significant history of polysubstance abuse and dependence involving alcohol, marijuana, crack cocaine—via both pipe and IV, methamphetamines, and opiates and benzodiazepines—obtained illicitly and by prescription.  She was still using both cocaine and marijuana regularly . . . in mid-2004 but reported only occasional use of alcohol and no methamphetamine use in three to four years.  <u>Records show that the claimant's requests for pain and nerve (Valium) medications when seeing her doctors at Cooper Green became increasingly more demanding, with threats to purchase the medications illicitly if her demands were refused</u>. . . .  When the claimant returned for her final session on April 7, 2005, she "<u>was begging for anything</u> for my nerves" and reported that she had used no marijuana or cocaine for two weeks and had been off Valium for two to three weeks. . . .  <u>Although the claimant has requested that her medications be increased</u>, [Dr. Harris] continues to prescribe Lortab and Valium at those levels currently.

(Tr. 28 (emphasis added)).  Such adverse self-reporting evidence, which illustrates the measures that Ms. Gillen has been willing to undergo in an effort to secure pain as well as other medications, provides the ALJ with good cause upon which to believe that Ms. Gillen has exaggerated her subjective complaints of pain and other disabling symptoms.

The ALJ further observed that Ms. Gillen  reportedly suffers from no adverse

11

side effects from her prescribed medications and finally found that her subjective complaints were inconsistent with her activities of daily living:

> The claimant has denied that she experiences any adverse side effects from her medications, and her activities of daily living further belie the severity of the pain alleged. She reportedly works puzzles, reads and watches television for extended periods of time with no reported difficultly remembering what she has read and seen, occasionally attends church, and visits with family frequently.

(Tr. 28 (citations omitted)).[7]

In *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002), the Eleventh Circuit reversed the district court's decision that the ALJ improperly applied the pain standard and found that the ALJ's decision was supported by substantial evidence because "the ALJ made a reasonable decision to reject Wilson's subjective testimony, articulating, in detail, the contrary evidence as his reasons for doing so." *Id.*, 284 F.3d at 1226. As the Eleventh Circuit discussed the ALJ's adequate credibility findings in *Wilson*:

> Moreover, the ALJ specifically enunciated the following findings:
>
> On or before December 31, 1987, [the date last insured,] there is

---

[7] Other activities that Ms. Gillen admits that she is able to do that the ALJ references earlier in his decision include keeping her travel trailer clean, maintaining personal hygiene, driving (if she had a vehicle and her license had not been suspended), shopping for groceries with the assistance of her sister, and handling her own finances. (Tr. 26).

> no objective clinical evidence of a condition which could reasonably be expected to produce the level of pain, lack of balance, numbness, weakness, lack of bowel control, fatigue, frequent need to eat, frequent need for bowel movements, headaches, need for additional rest during the day, or other symptoms which [Wilson] alleges precluded him from working. <u>Such allegations are also inconsistent with activities of daily living, limited use of pain medication and effectiveness of treatment, and therefore are not found credible to the extent claimant was precluded from working</u>.
>
> Substantial evidence in the record supports the ALJ's finding, as the medical and other evidence simply was not consistent with Wilson's alleged disabling pain. The evidence shows that from December 1986, a year prior to Wilson's date last insured, through 1992, Wilson made visits for regular vitamin B12 shots, received treatment for a rash, had moles removed, and had an isolated instance of testicular enlargement. <u>It does not appear that Wilson complained of pain associated with the injuries received from his accident any time past his date last insured. Thus, Wilson cannot establish that he continuously met the pain standard from on or before December 31, 1987, his date last insured, to within one year of his application date</u>.

*Id.*, 284 F.3d at 1226 (emphasis added).

Akin to the standard set forth in *Wilson*, the ALJ's negative credibility finding in this instance is supported by substantial evidence contained in the record. In sum, the ALJ articulated specific and sufficient reasons for only partially crediting Ms. Gillen's claimed degree and intensity of her subjective symptoms, and substantial evidence supports his determination adverse to Ms. Gillen under the Eleventh Circuit pain standard. Alternatively, even if the ALJ erred in not providing adequate details in his decision for discrediting Ms. Gillen, such error was harmless because the

record on the whole provides substantial evidence for discounting the level of Ms. Gillen's subjective symptoms. (*See, e.g.*, Tr. 266 (noting that, as of July 2007, Ms. Gillen "lives and is independent in activities of daily living"); *id.* (noting that, as of July 2007, Ms. Gillen "currently works part-time as a waitress")).

## II. THE ALJ DID NOT ERR IN RELYING UPON THE CONSULTATIVE EVALUATION OF DR. LISIAK.

The court also concludes that the ALJ did not commit legal error in relying upon the physical assessment of Ms. Gillen made by Dr. Lisiak. Dr. Lisiak examined Ms. Gillen on February 23, 2004, and provided a functional assessment regarding her ability to stand, walk, lift, and carry that is consistent with her residual functional capacity to perform light work. (Tr. 181-86).

As the ALJ explained the weight he assigned Dr. Lisiak's opinion:

> The undersigned finds the opinion of John Lisiak, M.D., a consultative examiner who saw the claimant in February 2004 to be the most consistent with her treatment history and objective findings and affords it significant weight.

(Tr. 28-29).

Relatedly, the ALJ afforded "little weight" to Dr. Jariwala's "physical medical source opinion form following his August 2005 consultative musculoskeletal examination" (Tr. 242-44) of Ms. Gillen with respect "to the opinion form reflecting the claimant's subjective complaints" as opposed to that portion of the record forming

14

the narrative report to which he assigned "considerable weight[.]" (Tr. 29, 238-39).

As the ALJ explained, Ms. Gillen's "subjective complaints are not supported by the other evidence of record and are not credible" (Tr. 29), and Dr. Jariwala's physical medical source opinion indicates that the form was completed "<u>based primarily upon the claimant's subjective complaints</u>[.]" (Tr. 244 (emphasis added)). On the other hand, Dr. Jariwala's narrative report of his examination findings shows "no neurological impairment, normal muscle strength, no impairment in dexterity, minimal to mild impairment in both feet and ankles, and no evidence of impairment in the rest of peripheral joints, including both knees and back" (Tr. 29, 238-39), and thus is more consistent with Dr. Lisiak's prior physical functional assessment of Ms. Gillen.

Ms. Gillen contends that Dr. Lisiak's opinion is out of date and "is based on an incomplete record." (Doc. 6 at 8). The mere "fact that a medical opinion may be more recent than another, while relevant to the patient's current condition, does not automatically invalidate the older opinion." *Readus v. Astrue*, No. 5:08-CV-1675-VEH (Doc. 16 at 24) (N.D. Ala. Mar. 10, 2010). Similarly, just because Dr. Lisiak's opinion was rendered before Ms. Gillen's most recently amended onset date of August 22, 2005, this does not mean that the document lacks significant evidentiary worth, especially when Ms. Gillen has a record of multiple onset dates covering a

total elapse in time of almost 3 years, *i.e.*, beginning with November 25, 2002, followed by on August 1, 2003, and ending with August 22, 2005.[8]

Moreover, while approximately 18 months had elapsed between when Dr. Lisiak examined Ms. Gillen in February 2004 versus when Dr. Jariwala did in August 2005, there is no medical record that Ms. Gillen refers to (nor has the court been able to independently locate one) which Dr. Jariwala had access to but Dr. Lisiak did not and which also shows that her condition somehow deteriorated during this time span such that Dr. Lisiak's opinion has become obsolete.

Relatedly, the subsequently developed records cited by Ms. Gillen that Dr. Lisiak's examination predates relate to her allegations of continued disabling pain. (Doc. 6 at 8 ("Dr. Lisiak did not have the benefit of any subsequent medical records which document <u>the Plaintiff's continued pain</u>.") (citing Tr. 187-90, 191-237, 250-64) (emphasis added)). Because the ALJ has effectively discredited Ms. Gillen under the Eleventh Circuit pain standard, the mere existence of subsequent medical records showing her continued complaints of disabling pain does not nullify Dr. Lisiak's

---

[8] Although no explanation is given by Ms. Gillen for requesting a third disability onset date of August 22, 2005, as opposed to staying with the earlier time of August 1, 2003, the court notes that Dr. Jariwala's opinion, which is also dated August 22, 2005, indicates that Ms. Gillen reported using cocaine from January 2001 to 2004 (and thus inclusive of August 1, 2003), but that she had been clean since January 2005.).

physical functional assessment of her.

Finally, although the ALJ assigned "little weight" to the opinion of consultative physician, Dr. Romeo, who provided a medical source opinion on Ms. Gillen in July 2007, Dr. Lisiak's milder restrictions placed on Ms. Gillen, as opposed to those of Dr. Jariwala, are more consistent with Dr. Romeo's conclusion "of virtually no limitation at all." (Tr. 29, 274-76). Accordingly, for all these reasons, the ALJ did not err in relying upon the physical functional assessment of Dr. Lisiak, and Dr. Lisiak's opinion properly provides substantial evidence in support of the ALJ's decision that Ms. Gillen's is able to perform light work, including her past relevant work as a waitress.[9]

## **CONCLUSION**

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards.

---

[9] The last portion of Ms. Gillen's brief references various factors pertaining to her in the context of applying the Medical Vocational Guidelines. (Doc. 6 at 9-10). However, use of the Medical Vocational Guidelines would only be at issue if Ms. Gillen had met her burden and it was necessary to reach the fifth step of the disability test. *See, e.g., Jackson*, 801 F.2d at 1293 ("Under the Social Security Act, Jackson bore the burden of proving that he could no longer perform his past relevant work.") (emphasis added) (citation omitted). Accordingly, the court also rejects the merits of this final issue raised by Ms. Gillen on appeal.

Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 18th day of March, 2010.

*/s/ Virginia Emerson Hopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge